Hubert E. HOWARD et al.,
Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 11807–11813.

United States Court of Appeals
Seventh Circuit.

Dec. 11, 1956.

William P. Sutter, Chicago, Ill., Samuel H. Horne, Washington, D. C., Harry B. Sutter, Peter L. Wentz, Chicago, Ill., Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., of counsel, for petitioners.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Harry Baum, Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioners seek review of the determination of the Tax Court that a certain transaction in June 1950, wherein petitioners exchanged common stock in Binkley Coal Company solely for voting common stock of Truax-Traer Coal Company constituted a taxable exchange under § 112(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (3).

Petitioners were stockholders in Binkley, an Illinois corporation engaged in the wholesale purchase and sale of coal, which had 4,615 shares of common stock outstanding. Binkley in turn, owned a majority (12,825 shares) of the common stock of Pyramid Coal Corporation, an Illinois corporation engaged in production and sale of coal. Its outstanding stock consisted of 20,000 shares of $100 par value common. The remaining 7,175 shares were owned by various individuals including certain of petitioners.

In 1950 Truax-Traer Coal Company, a corporation engaged in production, distribution and sale of coal, desiring to acquire Binkley and Pyramid, offered to take over the stock of the two companies on the following basis: (1) 3,700 shares of Binkley in exchange for 118,400 shares of Truax common stock; (2) 915 shares of Binkley at a price of $400 per share payable in cash; (3) 7,715 shares of Pyramid (representing all the shares not owned by Binkley) at $50 per share, payable in cash. The offer was accepted, and the terms of the contract were complied with, except that only 914 shares of Binkley were exchanged for cash, for the reason that one share was held by that corporation as Treasury stock.

The 3,700 shares of Binkley stock acquired solely in exchange for voting stock of Truax-Traer constituted 80.19% of the 4,614 total outstanding shares of Binkley. Each petitioner herein received only Truax-Traer stock for his Binkley stock. In their respective income tax returns for 1950, petitioners treated the transaction as a nontaxable exchange. In August 1950, petitioners Hubert E. Howard and Helen B. Howard sold some of the Truax-Traer stock which they had received in the exchange and reported the sale as a long-term capital gain. The Commissioner determined that the gain realized on the exchange should be recognized under the general rule of § 112(a) of the Code. On the sale by these petitioners, he employed a new basic holding period on the Truax-Traer stock, beginning with the effective date of the exchange and treated their gain as a short-term capital gain. The Tax Court sustained the Commissioner, concluding that although the 80% requirement of § 112(g) (1) (B) had been satisfied, the exchange was not "solely" for voting stock of the transferee corporation, and, therefore, did not satisfy the reorganization requirement of § 112 (b) (3).

In determining whether the gain at the time of the exchange was proper, it is necessary to consider somewhat in detail the pertinent statutory provisions. § 112(a) establishes the general rule that upon a sale or exchange the entire gain or loss is to be recognized except as otherwise provided by that section. § 112(b) defines certain exceptions. Specifically, § 112(b) (3), applying to "Stock for stock on reorganization", provides that "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." In determining what constitutes a "reorganization" within the meaning of § 112 (b) (3), it is necessary to look to § 112 (g) (1) (B), which defines a stock for stock reorganization as "the acquisition by one corporation, *in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock* and at least 80 per centum of the total number of shares of all other classes of stock of another corporation." (Emphasis supplied.)

The primary problem confronting us, then, is the taxable effect of the cash or "boot" transferred by Truax-Traer in its acquisition of 19.81% of the stock of Binkley. Petitioners urge that the "solely for voting stock" requirement of § 112(g) (1) (B) merely refers to the 80% provision and is not in itself an independent requisite, regardless of the amount of stock acquired. In the alternative, petitioners urge that if "solely" is a *sina que non* to the reorganization definition, then, by that very fact, § 112 (c) (1), the so-called "boot" provision, is applicable.

In considering petitioners' first contention, assuming the 80% requirement is met, the question to be answered, is whether, within the meaning of § 112 (b) (3), a gain is to be recognized merely because the acquiring corporation gives in exchange, consideration in addition to its own voting stock. The Commissioner contends that § 112(g) (1) (B) imposes two *independent* requirements: (1) a minimum of 80% of the voting stock must be acquired; and, (2) the exchange must be *solely* for the voting stock of the acquiring corporation and for no other or additional consideration.

Considering § 112(g) (1) (B) together with the regulations, we concede that if read literally, there is persuasion in petitioners' argument. Reg. 111, Sec. 29.112 (g)–2, in effect in 1950, provides: "In order to qualify as a 'reorganization' under section 112(g) (1) (B), the acquisition by the acquiring corporation of the required amount of the stock of the other corporation must be in exchange solely for all or a part of the voting stock of the acquiring corporation. If for example Corporation X exchanges nonvoting preferred stock or bonds in addition to all or a part of its voting stock in the acquisition of the required amount of stock of Corporation Y, the transaction is not a 'reorganization' under section 112(g) (1) (B)." The reference to the "required amount" could possibly be construed to mean that the qualification of "solely for voting stock" refers only to the "required amount", namely 80%.

In order to arrive at a satisfactory conclusion, it is helpful to examine the legislative history of this section. § 112 (g) (1) (B) of the Revenue Act of 1934 was the predecessor of § 112(g) (1) (B) of the 1939 Code. It defined a reorganization thus: "the acquisition by one corporation in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, * * * or of substantially all the properties of another corporation * * *." This provision was proposed by the Senate and enacted into law without change. Insofar as this definition related to a stock for stock exchange it contained the same requisites found in § 112(g) (1) (B) of the 1939 Code. It is important to note that, included in this very section of the

1934 Act, is the provision relating to the exchange of voting stock for assets, which was the predecessor of § 112(g) (1) (C) of the 1939 Code. In examining the Senate Report (S.Rep. No. 558, 73d Cong., 2d Sess., pp. 16 and 17 (1939–1 Cum.Bull. (Part 2) 586, 598–599) ), it should be observed that the purpose of this reorganization provision was to permit changes in corporation organization which were primarily changes in form and similar to statutory mergers and consolidations, due to the fact that "Not all of the States have adopted statutes providing for mergers or consolidations; and, moreover, a corporation of one State can not ordinarily merge with a corporation of another State * * * The committee believes that these transactions, when carried out as prescribed in this amendment, are in themselves sufficiently similar to mergers and consolidations as to be entitled to similar treatment." Concerning the technical requirements of proposed § 112(g) (1) (B), the Senate Committee had this to say: "It will be noted that the proposed amendment requires that (1) the acquiring corporation must obtain at least 80 percent of the voting stock * * * of the other corporation, * * * and (2) the acquisition, *whether of stock or of substantially all the properties,* must be in exchange solely for the voting stock of the acquiring corporation." (Emphasis supplied.) True, this statement by the Senate Committee, of itself, does not dispose of the issue confronting us. One could still contend that the "acquisition * * * solely for the voting stock" refers merely to the 80% requirement. Nevertheless, the Senate Report indicates quite obviously that, with reference to the "solely" requirement, no distinction was to be made between a stock for stock and a stock for assets transaction. The language "whether of stock or of substantially all the properties" seems conclusive on that point.

Based on the conclusion that, insofar as the "solely" requirement is concerned, the two types of transactions should be treated the same, the opinion in the leading case of Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789, is decisive of the particular problem now under consideration. There, a new corporation acquired all of the assets of an insolvent corporation from its foreclosing bondholders, in exchange for voting stock, stock warrants and cash. The "boot" transferred was a very small per cent of the total value of the properties of the old corporation. However, the Supreme Court did not consider it necessary to determine whether "substantially all" the properties were acquired for it squarely held that the "solely" requirement of § 112 (g) (1) (B) of the 1934 Act had not been satisfied. At pages 198 and 199 of 315 U.S., at page 550 of 62 S.Ct., the court stated: "clause (B) of § 112(g) (1) of the 1934 Act effects an important change as respects transactions whereby one corporation acquires substantially all of the assets of another * * *. The continuity of interest test is made much stricter. * * * Congress has provided that the assets of the transferor corporation must be acquired in exchange 'solely' for 'voting stock' of the transferee. 'Solely' leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement * * * the requirements of § 112(g) (1) (B) are not met if properties are acquired in exchange for a consideration other than, or in addition to, voting stock." See also, Pressed Steel Car Co. v. Commissioner, 3 Cir., 152 F. 2d 280, certiorari denied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1613; Central Kansas T. Co. v. Commissioner, 10 Cir., 141 F.2d 213; Forrest Hotel Corp. v. Fly, D.C., 112 F.Supp. 782. It is true, as petitioner points out, that these cases may well be distinguished from the present transaction on the ground that while they involve the transfer of voting stock for assets, the present case involves stock in exchange for stock. However, in light of our previous remarks, we deem that fact of no consequence.

The only case directly involving the "solely" issue in a stock for stock ex-

change is Commissioner of Internal Revenue v. Air Reduction Co., 2 Cir., 130 F.2d 145, wherein voting stock was given in exchange for 82% of the stock acquired and cash for the other 18%. At page 148 of 130 F.2d the court said: "Finally the taxpayer urges that, in the exchange by which the Pure Carbonic Company stock was acquired, no taxable gain could result because that was a nontaxable reorganization. But this theory is not tenable because the definition of reorganization in § 112(g) (1) (B) of the 1934 Act, 26 U.S.C.A.Int.Rev.Acts, page 695, contemplates only situations where the exchange is made 'solely' for voting stock. Here over 17% of the Pure Carbonic stock was purchased for cash. Cf. Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789."

█ We conclude that because of the cash payment, the transaction in question fails to meet the "solely" requirement of § 112(g) (1) (B) of the 1939 Code. Hence it does not fall within the ambit of § 112(b) (3).

In the alternative, petitioners urge that, if the payment of cash renders § 112(b) (3) inapplicable, then, *a fortiori*, § 112(c) (1) applies, so that gain is recognized only to the extent that cash is received. It would follow, therefore, that no gain would accrue herein, as no cash was received by the taxpayers.

█ It is suggested by respondent that since the question of applicability of § 112(c) (1) was not raised in the Tax Court petitioner should not be allowed to present it on appeal. However, it appears that it was squarely raised in petitioners' Motion for Reconsideration, to which respondent presented objections, and which was denied by the court. Inasmuch as the Commissioner was given ample opportunity to respond on the issue, he has in no way been unfairly treated and petitioner has a right to be heard. § 112(c) (1) is properly before us. Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037; Commissioner v. Washer, 6 Cir., 127 F.2d 446, 448.

§ 112(c) pertains to "Gain from exchanges not solely in kind." Specifically, § 112(c) (1) provides: "If an exchange would be within the provisions of subsection (b) (1), (2), (3) or (5) * * * if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

Petitioners contend that, in considering whether § 112(c) (1) applies to this transaction, it is necessary to look to § 112(b) (3) after omitting from consideration the cash payment involved in the transaction. On the other hand, respondent urges that there must be a qualifying reorganization within the meaning of § 112(g) (1) (B) or (C) before § 112(c) (1) can come into play. He takes the position that "section 112 (c) makes it possible for other property or 'boot' to be received in the course of a reorganization without destroying qualification under the statute. This leeway does not, however, extend to the second and third types of reorganization * * * namely reorganizations under section 112(g) (1) (B) and 112(g) (1) (C)."

We see no logical basis for this distinction. On the contrary, we can envision a situation where a small minority of dissident stockholders could completely block an otherwise tax-free reorganization. As pointed out in Miller v. Commissioner, 6 Cir., 84 F.2d 415, 419: "It is almost universal experience that some nonassenting stock must be acquired otherwise than through the mechanics of the consolidation plan." The Commissioner suggests that the minority shares could be redeemed. Nevertheless, if in fact dissident stockholders arbitrarily

refuse redemption, and they are bought off with cash of the acquiring corporation, under the theory of the Commissioner, there would seem to be little escape from the conclusion that the entire gain would be recognized. This seems quite contrary to the legislative scheme.

Our conclusion on this point is strengthened by consideration of the legislative history surrounding the analogous provision of the 1939 Code relating to the recognition of losses, namely, § 112(e), reading as follows: "Loss from exchanges not solely in kind. If an exchange would be within the provisions of subsection (b) (1) to (5), inclusive, or (10), or within the provisions of subsection (*l*), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized." Although the section refers to "Loss from exchanges not solely in kind", the language is practically identical with that of § 112(c) referring to gains. It certainly can be presumed that, insofar as so-called "boot" reorganizations are concerned, § 112(e) and § 112(c) were intended to be applied in identical fashion depending on whether a loss or gain was involved. Therefore, if respondent's argument is pursued to its ultimate conclusion, a taxpayer could have his entire loss recognized merely by taking slightly less stock in exchange for money or other property.

§ 203(f) of the Revenue Act of 1924 was the predecessor of § 112(e) of the 1939 Code. The report of the House Ways and Means Committee (H.Rep. No. 179, 68th Cong., 1st Sess., p. 15 (1939–1 Cum.Bull. (Part 2) 241, 252) ) makes it abundantly clear why § 203(f) was introduced. It states: "This subdivision provides that in the case in which 'boot' is received in connection with a transaction from which there would otherwise be no deductible loss,

no loss is to be recognized. In case the exchange results in a gain, the situation is covered in subdivision (d) (1) by a provision that the gain shall be recognized in an amount not in excess of the 'boot.' This limitation, however, is not a logical one, if applied to the case of an exchange resulting in a loss. Subdivision (b) of this section provides that no loss shall be recognized if the entire consideration for the exchange is a certain type of property. *Unless some provision is made for cases in which part of the consideration is money, the provisions of subdivision (b) could be avoided and the entire amount of the loss recognized if a small amount of money were received in addition to the specified property.* The only way to cover such a case and prevent the taxpayer from taking the entire loss by adding a small amount of money to the property received is to provide that no loss shall be recognized, otherwise the law might be evaded." (Emphasis supplied.)

■ Thus we may conclude that, in determining when these so-called "boot" provisions apply, Congress intended that the transaction is to be considered separate and apart from the "boot" received in determining whether it meets the nonrecognition provisions. If the transaction, absent the "other property or money", fulfills the requirements of § 112 (b) (3), then gain is to be recognized to the extent that "boot" is received.

■ In the present case, *but for* the cash received in exchange for 19.81% of the common stock of Binkley, the transaction would have met the "solely" requirement of § 112(g) (1) (B) and fallen within the scope of § 112(b) (3). To the extent that "boot" was received, gain would be recognized under our interpretation of the application of § 112 (c) (1). However, no cash was received by the taxpayers in question, and as a consequence thereof, no gain at the time of the transaction ever arose.

The judgment is reversed and the cause remanded for proceedings in accord with the pronouncements contained herein.