**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Grover D. TURNBOW and Ruth H. Turnbow, Respondents.**

**No. 16775.**

United States Court of Appeals Ninth Circuit.

Dec. 5, 1960.

**670**

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., Harry Baum, Atty., Dept. of Justice, Washington, D. C., for appellant.

Pillsbury, Madison & Sutro, Francis R. Kirkham, Harry R. Horrow, Francis N. Marshall, Whitcomb J. McFarland, San Francisco, Cal., for respondents; M. W. Dobrzensky, S. H. Dobrzensky, Oakland, Cal., of counsel.

Before MERRILL and KOELSCH, Circuit Judges, and BOWEN, District Judge.

MERRILL, Circuit Judge.

This case presents the following question: whether gain realized by a taxpayer upon the transfer of his stock in a wholly owned corporation in consideration for voting stock in another corporation plus cash is recognizable in its entirety or only to the extent of the cash received. The Tax Court, following Howard v. Commissioner of Internal Revenue, 7 Cir., 1956, 238 F.2d 943, has ruled that the gain is recognizable only to the extent of the cash received. Gro-

ver D. Turnbow, 32 T.C. 646. We have concluded that this was error and that the gain is recognizable in its entirety.

The taxpayer, Turnbow, was the sole stockholder of International Dairy Supply Company, a Nevada corporation which had its principal place of business in San Francisco, California. In 1952, the taxpayer transferred his stock in that company to Foremost Dairies, Inc., a New York corporation which had its principal place of business in Jacksonville, Florida. This transfer was in exchange for 82,375 shares of the common stock of Foremost and $3,000,000.00 cash, so-called "boot." The Foremost shares were of a value of $1,235,625.00. Thus the shares constituted 29% of the total consideration received, while the boot constituted 71%.

The taxpayer reported a capital gain on the transaction limited to the $3,000,-000.00 cash boot, less expenses which by agreement he had undertaken to assume. The Commissioner determined that the entire gain on the transaction was taxable, establishing that gain at $4,163,-691.94. Tax deficiencies for the years 1952 and 1953 in the amounts, respectively, of $264,037.43 and $14,786.26 were determined.

The taxpayer petitioned the Tax Court for review. That court held that gain on the transaction should be limited to the cash boot. The deficiencies were disallowed. The Commissioner has petitioned this court for review.

The problem presented involves construction of § 112 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112, which deals with recognition of gain or loss.

Section 112(a) sets forth the general rule that "upon the sale or exchange of property the entire amount of gain or loss * * * shall be recognized, except as hereinafter provided in this section."

Among the exceptions specified, § 112 (b) deals with exchanges solely in kind, and § 112(b) (3) deals with exchanges of stock for stock on reorganization. It provides:

"No gain or loss shall be recognized if stock or securities in a corporation a party to reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

The term "reorganization," as used in § 112(b) (3), is defined in § 112(g) (1), which, as amended in 1943, provides:

"The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (E) a recapitalization, or (F) a mere change in identity, form, or place of organization, however, effected."

In this case we are concerned with the definition set forth in Clause (B) of § 112(g) (1). Our discussion also deals with the definition set forth in Clause (C). Today these types of reorganization are known to the tax bar as (B) and (C) reorganizations and we shall take advantage of this terminology.

Section 112(c) is the section upon which the taxpayer relies for his right to limit recognition of gain to the cash boot.

As amended in 1943, § 112(c) (1) provides:

"If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (l), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (l) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The dispute before us is as to the method to be followed in applying § 112 (c) to the facts of a case. The Tax Court purported to follow its earlier decision upon this problem in Luther Bonham, 1936, 33 B.T.A. 1100, 1103–1104. It quoted that opinion (supplying its own emphasis) as follows:

"It is necessary therefore to determine whether or not the exchange of * * * stock for * * * stock *would be* within the provisions of subsection (b) (3) *if the item of cash had been omitted* and only * * stock had been received in exchange for * * * stock."

Howard v. Commissioner of Internal Revenue, supra, 238 F.2d at page 948, was also quoted to the following effect:

"In the present case, *but for* the cash received in exchange for * * common stock of Binkley, the transaction would have met the 'solely' requirement of § 112(g) (1) (B) and fallen within the scope of § 112 (b) (3). To the extent that 'boot' was received, gain would be recognized under our interpretation of the application of § 112(c) (1)."

Applying this method to the case at bar, the taxpayer reasons: but for the cash received, the transaction—solely stock for stock—would have met the "solely" requirements of both §§ 112(b)

(3) and 112(g) (1) (B) and fallen within the nonrecognition provision of § 112 (b) (3). Therefore, he says, under § 112(c) the gain to be recognized is limited to the amount of the cash received.

The Commissioner contends that § 112 (b) (3) requires an actual and not a hypothetical reorganization before nonrecognition can result; that petitioner's method assumes the absence of boot not only to determine whether § 112(b) (3) would apply but also to determine whether the § 112(g) (1) (B) definition would apply; that this does violence to § 112 (b) (3), which expressly contemplates the existence of a reorganization.

The method of applying § 112(c), advocated by the Commissioner, is to ascertain first whether a reorganization exists under § 112(g) (1). If it does, then and only then can the nonrecognition provisions of § 112(b) (3) become applicable. If it does not, § 112(b) (3) cannot apply. Only when § 112(b) (3) applies, can § 112(c) operate to modify its consequences.

Applying this method to the case at bar, the Commissioner reasons that, since the presence of boot precludes a (B) reorganization, § 112(b) (3) cannot apply and the gain is subject to taxation under § 112(a). Under the Commissioner's construction, (B) and (C) reorganizations are forever excluded from the operation of § 112(c). The other types of reorganizations specified in § 112(g) (1), however, do remain subject to the operation of § 112(c).

Upon this dispute, legislative history supports the Commissioner's position.

Prior to 1934, there were no (B) or (C) reorganizations as such.[1] Section 112(i) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 513, (the prior analogous section to § 112(g) (1) of the 1934 Act, 26 U.S.C.A. Int.Rev.Acts, page 695) read in pertinent part:

"The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation)."

The provisions of §§ 112(b) (3) and 112 (c), however, existed in substantially their present form.

The reasons for the 1934 amendment of § 112(g) (1) are clearly disclosed by congressional reports and discussion. The House Ways and Means Committee Report, H.Rep. No. 704, 73d Congress, 2d Session 13 (1934) states:

"The reorganization provisions have been in effect for many years, having been adopted in substantially their present form in 1924. They state in detail how each step of a reorganization should be treated for tax purposes. The policy was adopted of permitting reorganizations to take a wide variety of forms, without income-tax liability. As a result, astute lawyers frequently attempted, especially during the prosperous years, to take advantage of these provisions by arranging in the technical form of a reorganization, within the statutory definition, what were really sales."

A letter from the Secretary of the Treasury, which appears in the Congressional Record, 78 Cong.Rec. 2512 (1934) states:

"Exchanges and reorganizations. The Treasury regards it as desirable that business readjustments be permitted without tax consequences in cases where the stockholders in the enterprise are retaining their interests without the receipt of cash and the essential continuity of the business is being preserved. On the

---

1. Even the 1934 amendment did not separate (B) and (C) reorganizations. Both were dealt with under Clause (B). It was not until the Internal Revenue Code of 1939 that the separation occurred which has given rise to today's terminology.

other hand, the Treasury has suffered a considerable loss of revenue in recent years through the adroitness of attorneys in planning sales in such a way as to come within the scope of the reorganization provisions. The bill revises the definition of reorganization in order to eliminate serious loopholes in this provision, while legitimate exchanges and reorganizations may still be carried out without the realization of gain or loss. In the opinion of the Department, a considerable saving in revenue will result from these amendments without the injurious effects to business which would have been caused by a complete elimination of these provisions."

A subcommittee of the House Ways and Means Committee, studying the revision of the revenue act, was sufficiently exercised over avoidance practices to give serious consideration to the advisability of eliminating completely the provisions governing reorganization exchanges. H. Rep., December 4, 1933, 73d Congress, 2d Session, 8–9 (1933). However, the House Ways and Means Committee, in its report, stated:

"The committee decided that, under present conditions, the wiser policy is to amend the provisions drastically to stop the known cases of tax avoidance, rather than to eliminate the sections completely." H.Rep. No. 704, 73d Congress, 2d Session, 13 (1934).

The House committee's solution was to eliminate from the definition of reorganization, as it then appeared in Clause (A), the parenthetical phrase following the words "merger or consolidation."

Had this solution been adopted, there would have been no (B) or (C) reorganizations and § 112(c) obviously could have no reference to such transactions.

The Senate Finance Committee reported, S.Rep. No. 558, 73d Congress, 2d Session, 16 (1934):

"Your committee is in complete agreement with the purposes of the House bill which aim at tax avoidance schemes in this connection. However, some modifications are recommended in order to bring about a more uniform application of the provisions in all 48 of the States. Not all of the States have adopted statutes providing for mergers or consolidations; and, moreover, a corporation of one State cannot ordinarily merge with a corporation of another State. The committee believes that it is desirable to permit reorganizations in such cases, with restrictions designed to prevent tax avoidance. Consequently, the committee recommends the insertion in the House bill of an addition to the definition of the term 'reorganization' as follows: * * * "

Then follows the Clause (B) definition which was eventually incorporated into § 112(g) (1) of the 1934 act.

Emphasizing its views that the tax avoidance problems would be met, the report states at page 17:

"It will be noted that the proposed amendment requires that * * * the acquisition, whether of stock or of substantially all the properties, must be in exchange solely for the voting stock of the acquiring corporation."

It is clear from this history that, with specific abuses in mind, Congress sought to eliminate them by requiring that, for an acquisition to qualify for the tax advantages of a reorganization, it must be in exchange solely for voting stock.

With reference to this requirement the Supreme Court has stated in Helvering v. Southwest Consolidated Corporation, 1941, 315 U.S. 194, 198, 62 S.Ct. 546, 550, 86 L.Ed. 789:

"But clause B of § 112(g) (1) of the 1934 Act effects an important change as respects transactions whereby one corporation acquires substantially all of the assets of another. See S.Rep. No. 558, 73d Cong., 2d Sess., Committee Reports, Revenue Acts 1913–1938, pp. 598–

599. The continuity of interest test is made much stricter. See Paul, Studies in Federal Taxation (3d Series), pp. 36–41. Congress has provided that the assets of the transferor corporation must be acquired in exchange 'solely' for 'voting stock' of the transferee. 'Solely' leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement. See Hendricks, Developments in the Taxation of Reorganizations, 34 Col.L. Rev. 1198, 1202–1203."

Certainly it could not have been intended by Congress that this result would be frustrated at birth by the already existing provisions of § 112(c); yet such would seem to be the effect of the taxpayer's construction.

The Commissioner's construction seems supported by subsequent congressional action. If (B) reorganizations can hypothetically exist notwithstanding boot, the same would apply to today's (C)-type reorganizations, which also were created by the 1934 amendments.

" * * * the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation * * *." § 112(g) (1) (B) of the Revenue Act of 1934.

Yet, in 1939, Congress saw fit to amend the definition of (C) reorganizations by providing:

" * * * but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded * * *." § 112 (g) (1) (C) of the Internal Revenue Code of 1939.

In § 368(a) (2) (B) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 368(a) (2) (B), the definition was further amended to provide that only 80% of the assets of the acquired corporation need be obtained in exchange for voting stock; that boot could, without defeating reorganization, be the consideration for assets above 80%. Under the taxpayer's construction, neither of these amendments was necessary. That Congress felt it necessary so to amend the section indicates that the Commissioner's construction reflects the true congressional intent and understanding.

The taxpayer refers us to a point emphasized in Howard v. Commissioner of Internal Revenue, supra. Section 112(e) is the counterpart of § 112(c), the latter dealing with recognition of gains and the former with recognition of losses. Section 112(e) has remained virtually unchanged since its original enactment as § 203(f) of the Revenue Act of 1924. It provides:

"If an exchange would be within the provisions of subsection (b) (1) to (5), inclusive, or (10), or within the provisions of subsection (*l*), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized."

Howard points out that if the presence of boot results in recognition of gains it likewise results in recognition of losses; that a taxpayer desiring that a loss be recognized might convert what otherwise would be a legitimate reorganization into a sale by the payment of a trifling amount of cash; that such a construction would thus defeat the 1924 legislative intent in enacting § 112(e).

It would appear, however, that Congress in 1934 was aware that attempts might be made under the proposed amendment to secure recognition of losses notwithstanding actual continuity of interest. The House Ways and Means Committee, as we have noted, recommended that the "acquisition" type of transaction (the forerunner of today's (B) and (C) reorganizations) be completely eliminated from the definition

of reorganization. At the same time the report stated:

"Furthermore, the retention of the other reorganization provisions will prevent large losses from being established by bondholders and stockholders who receive securities in a newly reorganized enterprise which are substantially the same as their original investments." H.Rep. No. 704, 73d Congress, 2d Session, 14 (1934).

Thus it would appear that in the judgment of Congress the danger of tax avoidance (through securing recognition ·of losses notwithstanding continuity of interest) was avoided by the probability that the acquisitions resulting in loss could be treated as reorganizations under the remaining provisions of § 112 (g) (1).[2]

Whether this judgment was sound apparently still remains to be tested. However, Congress would seem to have weighed the desirable features of the proposed amendment (as to gains) against its undesirable potentialities (as to losses). For us to permit the possibility of tax avoidance under § 112(e), to control our construction of § 112(c), would be to overrule the apparent judgment of Congress upon this very question.

The Tax Court opinion in this case points out that the Commissioner's regulations are deemed to have received the approval of Congress (citing Lykes v. United States, 1951, 343 U.S. 118, 72

S.Ct. 585, 96 L.Ed. 791; Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52) and places reliance upon the Commissioner's regulations, 118 § 39.112 (g)–4. In our view, this section casts little light on the problem. On the other hand, § 39.112(g)–1(c) of the regulations lends support to the Commissioner's position. It provides in part:

"From its context the term 'a party to a reorganization' can only mean a party to a transaction specifically defined as a reorganization by section 112(g). * * * The provisions of the Internal Revenue Code referred to in this paragraph [this includes § 112(c) ] are inapplicable unless there is a plan of reorganization. A plan of reorganization must contemplate the bona fide execution of one of the transactions specifically described as a reorganization in section 112(g) and for the bona fide consummation of each of the requisite acts under which nonrecognition of gain is claimed."

We conclude that, if the "solely for voting stock" requirement of (B) and (C) reorganizations is to be given the effect intended by Congress, § 112(c) cannot operate to render a stock-plus-boot acquisition a (B) or (C) reorganization through a disregard of the existence of boot. In the case before us, then, the existence of boot prevents § 112(g) (1) (B) from applying; since no reorganization exists, § 112(b) (3) cannot apply; § 112(c) is then also inapplicable.

---

2. The judgment of Congress would also seem to have taken into consideration the apparent lack of effectiveness of § 112 (e) in preventing loss taking in corporation exchange transactions. The report of the subcommittee of the House Ways and Means Committee stated in H.Rep., December 4, 1933, 73d Congress, 2d Session 37–42 (1933) :
"The statute provides that upon sale or exchange of property, the entire amount of gain or loss shall be recognized with certain exceptions. The exceptions are the exchange and reorganization provisions already referred to. If a taxpayer desires to take a loss, it

is easy to arrange a transaction falling without the exceptions. On the other hand, if it is desired to pay no tax on the gain, the transaction can be so arranged as to come within the exception. In addition, losses from the sale or exchange of stocks and bonds are limited, to a large extent, to gains from such sales or exchanges so in many cases a stock or bond loss, even if recognized, could not be utilized by the taxpayer."
This quote also appears at: Hearings before the House Committee on Ways and Means on the 1934 Revenue Bill, 73d Congress, 2d Session 60 (1934).

Reversed and remanded with instructions that the deficiencies determined by the Commissioner be reexamined in the light of this opinion.