**Richard M. MILLS and Moise W. Mills et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 20467.

United States Court of Appeals
Fifth Circuit.

May 6, 1964.

Charles M. Cork, Jr., Macon, Ga., Charles M. Cork, Macon, Ga., Jones, Sparks, Benton & Cork, Macon, Ga., of counsel, for petitioners.

John B. Jones, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Crane C. Hauser, Chief Counsel, I. R. S., Charles S. Casazza, Atty., I. R. S., Louis F. Oberdorfer, Asst. Atty. Gen., Harry Baum, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before MARIS,* GEWIN and BELL, Circuit Judges.

MARIS, Circuit Judge.

These consolidated petitions to review three decisions of the Tax Court present the issue whether the common transaction in question qualifies as a nontaxable reorganization within the meaning of section 368(a) (1) (B) of the Internal Revenue Code of 1954, 26 U.S.C. § 368 (a) (1) (B).

The petitioners, three brothers,[1] who owned in equal shares all the stock of three small gas corporations, were negotiating early in 1954 to merge their corporations with seven other small gas corporations into one corporation. Before this proposed merger reached fruition, negotiations were commenced for a possible merger of these ten corporations with General Gas Corporation, as a result of which on May 20, 1954 an option agreement was signed with General Gas Corporation which provided that General Gas Corporation, in return for the stock it received, would distribute to each stockholder of each acquired corporation a sufficient number of its shares of common stock to be valued at $14.00 per share, to equal the net book value of each acquired corporation as determined by audit, and further provided "that in the event the purchase price is not evenly divisible by shares at Fourteen Dollars ($14.00) per share, the difference will be paid in cash."

The option was exercised and on July 26, 1954 each of the petitioners, in exchange for all his shares in each corporation, was issued 1595 shares of common

---

* Of the Third Circuit, sitting by designation.

1. The petitioners' wives are parties only because joint federal income tax returns were filed.

voting stock of General Gas Corporation. The value of the shares to which the petitioners became entitled was not evenly divisible at $14.00 per share into the net book value of the acquired corporations and each petitioner was accordingly paid $27.36 in cash in lieu of fractional shares.[2] In their federal income tax returns for 1954 the petitioners did not report any income from this transaction. The Commissioner determined that the transaction resulted in a long-term capital gain for the year 1954 and did not constitute either a non-taxable or a partially non-taxable exchange under the Internal Revenue Code of 1954, basing his determination on the ground that there had not been a corporate reorganization as defined in section 368.[3] Deficiencies were assessed against each of the petitioners based upon the value of the stock, which was found to be $27,912.50, and the cash payment of $27.36, after deducting $4,000.00, the basis of each petitioner's stock interest in the three corporations. Review of the Commissioner's determination was sought in the Tax Court. The cases were tried by Judge Forrester and reviewed by the court in banc. Judge Forrester, in an opinion concurred in by an undisclosed number of his colleagues, assumed that under the facts a plan of reorganization did exist but concluded that the transaction did not fall within section 368(a) (1) (B)

because, as he believed, the exchange was not solely for stock but rather one for stock and cash. Six judges dissented.[4] Accepting the assumption that the option was part of a plan of reorganization rather than an outright sale of stock, the dissenting judges took the view that under the facts the cash given in lieu of fractional shares did not constitute part of the consideration for the shares being acquired and thus the requirement of a reorganization under section 368(a) (1) (B), that the exchange be "solely" for stock was met. Three judges[5] concurred on a finding that the transaction was a purchase and sale of stock and not a stock-for-stock exchange, concurring with Judge Forrester only in the resulting decisions sustaining the deficiency determinations of the Commissioner. Accordingly, assuming that the remaining six judges of the Tax Court[6] voted with Judge Forrester, thirteen judges agreed that the exchange was made pursuant to a plan of reorganization but seven of them believed that the statute and the decided cases required the conclusion that the exchange made was one for "stock and cash". The Tax Court entered decisions sustaining the determination of the Commissioner. Mills et al. v. Commissioner of Internal Revenue, 1962, 39 T.C. 393. These petitions followed.

2. Each petitioner was issued:
   1321 shares and $10.88 in cash for 30 shares of Mills Gas and Appliance Company, Inc.
   251 shares and $8.36 in cash for 6 shares of Dixie Gas Distributors Corporation
   23 shares and $8.12 in cash for 6 shares of Dixie Gas and Electric Company

3. Section 368 in pertinent part provides:
   "§ 368. Definitions relating to corporate reorganizations
   "(a) Reorganization.—
   "(1) In general.— * * * the term 'reorganization' means—
   * * * * * * *
   "(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has con-

trol of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);
   "* * * *"

4. Judge Train wrote the dissenting opinion, joined in by Judges Tietjens, Pierce, Mulroney, Drennen, and Fay.

5. Judges Withey, Bruce and Fisher.

6. We have no way of knowing how many of the remaining members of the Tax Court, Judges Opper, Raum, Atkins, Scott, Dawson and Hoyt, concurred with Judge Forrester. It is unfortunate that the Tax Court chooses not to disclose the names of the judges who participate in the decisions ultimately rendered. See Stern v. Commissioner of Internal Revenue, 3 Cir. 1954, 215 F.2d 701, 706–708.

We observe, *in limine*, that the Commissioner places no reliance on the theory of the three concurring judges that the transaction constituted a purchase and sale. It appears that the Commissioner accepts the theory that the option agreement was intended to be a plan of reorganization and that the parties intended to exchange stock for stock but that the provision of the agreement for cash payments in lieu of fractional shares disqualified the transaction as a reorganization within the meaning of section 368 (a) (1) (B).

We have carefully considered the legislative history of the analogous provisions of the prior statutes from which section 368 of the 1954 Code was derived and the cases construing those provisions, but find nothing to justify the position taken by the Commissioner.

The legislative history indicates that the Congressional committees, in considering the reorganization provisions of the Internal Revenue Code, recognized that reorganizations might be required in order to strengthen the financial condition of corporations, but that these provisions could be used as a method of tax avoidance by arranging in the technical form of reorganizations what were in reality sales. It was considered commendable that the courts had looked through the mere form of such transactions into their substance and that the Supreme Court had indicated that the broad principle underlying these sections is that no taxable profit is realized from a reorganization, if no money passes and if the changes in corporate organization are essentially changes only in form, with the stockholders continuing their former interest in the original enterprise.[7]

In the Revenue Act of 1934, and the succeeding Internal Revenue Code of 1939, Congress had provided in section 112(g) (1) (B) that the term "reorganization" means, *inter alia*, "the acquisition by one corporation, in exchange *solely* for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation." [Emphasis supplied]. In Helvering v. Southwest Consolidated Corp., 1942, 315 U.S. 194, 198, 62 S.Ct. 546, 550, 86 L.Ed. 789, 794, the Supreme Court, applying this definition, which was the precursor of section 368(a) (1) (B) of the Internal Revenue Code of 1954, said: " 'Solely' leaves no leeway. Voting stock plus some other consideration does not meet the statutory requirement * * * the requirements of § 112(g) (1) (B) are not met if properties are acquired in exchange for a consideration other than, or in addition to, voting stock." See, also Turnbow v. Commissioner, 1961, 368 U.S. 337, 82 S.Ct. 353, 7 L.Ed.2d 326.

We turn then to consider the narrow question presented in these cases whether the exchange was "solely" for voting stock as required by the Code, in other words, whether any consideration of value in addition to its voting stock must be deemed to have been given by the acquiring corporation when it paid the petitioners in cash for the fractional shares to which they were entitled. The Commissioner concedes that the cash payment made to each petitioner was merely for the purpose of simplifying the corporate and accounting problems which would have been caused by the actual issuance of fractional shares. To quote his counsel:

" * * * The fractional share problem is necessarily present in many, if not most, stock-for-stock exchanges and arises simply from the fact that, although the basic object is to exchange solely stock, the application of the agreed-upon rate of exchange to each stockholder's holdings may not always result in

---

7. H.Rept. No. 704, 73d Cong., 2d Sess., Feb. 12, 1934, Committee Reports on the Revenue Acts 1913–1938, Cum.Bull. 1939-1 (Part 2) p. 564; S.Rept. No. 558, 73d Cong., 2d Sess., March 28, 1934, Ibid. p. 598; H.Rept. No. 1337, 83d Cong., 2d Sess., 1954, 3 U.S.Code, Cong. and Adm. News, pp. 4269–4270; S.Rept. No. 1622, Ibid. p. 4911.

whole numbers. Simple as a matter of working out the mechanics of the exchange, therefore, some method must be found of disposing of the fractional share interests. The simplest and most direct method, of course, is to give cash equivalents to those entitled to less than a whole share, and it is difficult to see, we acknowledge, how the giving of a small amount of cash solely for that purpose would offend the underlying purpose of the statute. In functional terms, at least, the case is quite different from one in which an extra bit of cash, even though equally small in absolute amount, is bargained for as an *independent* part of the consideration—e. g., an exchange in which the consideration is *defined* in terms as a stated number of shares plus a fixed amount of cash." [Brief for the Commissioner, pp. 37–38.]

The "simplest and most direct method" thus described is exactly the one which was followed in the present case. The parties clearly intended to exchange stock for stock and actually did so, except for the cash given as the exact equivalent of the fractional shares involved. The Commissioner concedes that this cash was not an independent part of the consideration. Judge Train, dissenting in the Tax Court, so concluded. He said: [39 T.C. at p. 403]

"I interpret the word 'solely' as requiring that there be no *consideration* other than voting stock. Consideration in the accepted sense is an inducement to a contract, an impelling influence which induces a contracting party to enter into a contract. To construe here what was simply a mathematical rounding off as constituting additional consideration over and beyond the voting stock mocks the statute as well as the perfectly reasonable plan of the parties to the agreement."

We are in complete accord with this statement.

Counsel for the Commissioner suggested in argument that the parties might have followed another course. He stated that the Internal Revenue Service has recognized procedures under which fractional shares may be handled in a qualifying reorganization. Thus he says that it would be proper for the corporation, at the direction of the person entitled to a fractional share, to buy an additional fraction to make a whole share for him or to sell the fractional share for his account to another shareholder or on the open market; or for the corporation to appoint an independent agent to carry out this task. And, since the Service recognizes that in a reorganization the acquiring corporation is responsible for distributing its stock in an appropriate number of shares, including fractions, to each exchanging shareholder, it has taken the position that such an agent's expenses may be paid by the acquiring corporation. The Commissioner argues, however, that the reorganization here under consideration cannot qualify because, instead of buying or selling fractional shares for the account of the shareholders either from or to other shareholders or on the open market, the acquiring corporation paid cash equal to the interests that would have been represented by the fractional shares, and such cash payments are prohibited by the reorganization provisions applicable here. To accept this argument would indeed be to give recognition to pure form while closing our eyes to the real nature of the transaction. We see no substance in the distinction made by the Commissioner, in an otherwise legitimate reorganization, between the case where the corporation rounds out fractional shares by purchase or sale through a third party and the case where it is done by the corporation itself, as here. The actual consideration given in exchange for the stock remains the same and for all practical purposes consists solely of stock.

We conclude that the reorganization involved in these cases qualified under section 368(a) (1) (B) as one involving

an exchange of stock solely for stock of another corporation without any additional independent consideration. We, therefore, do not decide whether the rule *de minimis non curat lex* would be applicable, as the petitioners assert, if the cash received by them had represented an independent consideration.

The decisions of the Tax Court will be reversed.